| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Docket Nos.: 3:25-CR-118 |
| | ) | 3:25-CR-140 |
| v. | ) | |
| | ) | JUDGE VARLAN |
| ANDREW WORRALL | ) | |

## SENTENCING MEMORANDUM FOR THE UNITED STATES

Defendant has entered into universal plea agreement with the United States to include the Eastern District of Tennessee (EDTN) case number 3:35-CR-118 and District of South Carolina (DSC) case number 3:35-CR-140 of the kind specified in Federal Rule of Criminal Procedure 11(c)(1)(B). The United States and Defendant agreed to cap the sentence range at two-hundred thirty-five (235) months imprisonment. [Doc. 33, ¶ 8 and Doc. 4, ¶ 8][1]. Both parties understand that the agreed upon cap of two-hundred thirty-five (235) months imprisonment is not binding on the Court and that if rejected by the Court, may not be used as a basis to rescind the plea agreement, or withdraw Defendant's guilty plea.

If a plea agreement includes a specific sentence, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the Court may accept the agreement if the Court is satisfied that: (1) the agreed sentence is within the applicable guideline range, or (2)(A) the agreed sentence is outside the guideline range for justifiable reasons; and (B) those reasons are set forth with specificity in the statement of reasons form. U.S.S.G. § 6B1.2(b). The guideline range as to count one charging Defendant with exploitation of a child in EDTN indictment case number 3:25-CR-118, and count one charging Defendant with production of child pornography in the SDC indictment

---

[1] As Defendant has two case numbers, the citing of documents will be in order of case number ending in 118 followed by case number ending in 140.

case number 3:25-CR-140, calculated in the Presentence Report (PSR), is 360 months imprisonment, because the statutory maximum for each count is thirty (30) years for each count. [Docs. 46, ¶87 and 17, ¶ 87]. The United States respectfully asks this Court to sentence Defendant at the cap of two-hundred thirty-five (235) months imprisonment agreed upon by the parties. Although the agreed upon cap is below the guideline range, the offer was made and accepted for justifiable reasons which will be presented at the sentencing hearing.

**STATEMENT OF FACTS**

### 1. Overview

On July 18, 2025, the Department of Energy – Office of the Inspector General (DOI-OIG) received an email and screenshots regarding Defendant who was employed as the Director of Oak Ridge National Laboratory's (ORNL) nuclear energy programs. [Doc. 33, ¶ 5 and Doc. 4, ¶ 5]. The email and screenshots alleged Defendant was communicating with a female over the application Snapchat whom he believed to be sixteen (16) years old for the purposes of sex. [*Id.*]

An investigation began and Defendant's Snapchat records were legally obtained and reviewed. The records reviewed found Defendant was sexually exploiting minors in different parts of the United States. [*Id.*]

Specifically, in the EDTN, on July 7, 2025, Defendant contacted a seventeen (17) year old minor, MV1, using the internet through his Snapchat account. In Snapchat communications, Defendant began by asking for MV1's age. [*Id.*] MV1 responded that she is seventeen (17) years old. [*Id.*] Defendant asked for photos and asked if she liked older guys. [*Id.*] Defendant asked if MV1 had been fucked by an older man. [*Id.*] Defendant asked: "Would you like to make daddy all hard now for you?" Defendant began sending audio messages: "Be a good girl then and show daddy your beautiful little body. So daddy can stroke his big thick cock for you." [*Id.*] MV1 sent

a video of her long, manicured nails masturbating with her vagina exposed. [*Id.*] Defendant asked MV1 to "show daddy your beautiful little titties? I bet you have such a perfect little body. Daddy would love." [*Id.*] Defendant continued enticing MV1 to send him videos of specific explicit conduct for his sexual arousal. [*Id.*]. In hopes of enticing MV1 for more sexually explicit videos of herself, Defendant sent a video of himself masturbating. [*Id.*] In response, MV1 sent the requested sexually explicit video. *[Id.]*

On July 7 and 8, 2025, in the DSC, Defendant contacted another seventeen (17) year old minor, MV2, using the internet through his Snapchat account. [*Id.*] The communication was similar to the MV1 communication. [*Id.*] Defendant asked MV2's age and was told she was seventeen (17). [*Id.*] Defendant prompted MV2 to prove she was real by sending pictures. [*Id.*] MV2 sent clothed images and a live video saying she was real and from what city she hailed. [*Id.*] Defendant provided MV2 with $20 for a nude video. [Docs. 46 ¶ 34, and 17, ¶ 34]. The money sent allowed for Defendant to receive a video from MV2 exposing her breasts. He then said: "Show me how you play with your pussy baby." [*Id.*] "Make daddy cum for you." [*Id.*] MV2 responded by sending images and videos of her putting her fingers in her vagina to Defendant. [*Id.*] Defendant also provided MV2 with "tips" detailing how to make a sexually explicit shower video of herself. [Docs. 46 ¶ 34, and 17, ¶ 34].

The investigation led to approximately twenty (20) other minor victims whom he was communicating with on Snapchat. [Docs. 46 ¶ 34, and 17, ¶ 34]. The child pornography (CP) on Defendant's phone was minimal in comparison to his hard drive that was seized. The National Center for Missing and Exploited Children (NCMEC) analysis on the hard drive found 209,453 CP images/videos.

**ANALYSIS**

1. *The factors stated in 18 U.S.C. § 3553(a) favor a sentence of two-hundred- and thirty-five-months (235) imprisonment at a minimum.*

As the Court and Defendant are aware, the sentence to be imposed should be "sufficient, but not greater than necessary," to meet the following needs as set forth in 18 U.S.C. § 3553(a). Specific to the instant case, three factors for consideration are:

> (A)    the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B)    to afford adequate deterrence to criminal conduct;
>
> (C)    to protect the public from further crimes of the defendant;

**(A)    The sentence to be imposed should be sufficient, but not greater than necessary, to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment.**

When fashioning an appropriate sentence, the seriousness of the offense, promotion of respect for the law and just punishment are all factors to consider. An adult who entices underage female children to send CP images/video of themselves is a serious crime. Sexually exploiting minor girls as a hobby brings Defendant's criminal acts to a different level. Period. Defendant used the application Snapchat to find minor females from all over the United States to entice into, and for, his sexual pleasure.

Not only are Defendant's crimes serious, but they are extremely troubling. Defendant's crimes were not a one-time anomaly. Searching out young girls on Snapchat. then enticing them for explicit sexual photos/videos. was a time-consuming hobby. Defendant had 209,453 images/videos of CP, a staggering amount for even the most prolific collector of child pornography. Law enforcement is unable to determine from the images/videos if they were created at the direction of Defendant, or if he obtained them from another source. As this Court knows, most of the minor victims in Defendant's vast collection will never be identified, nor will

the extent of the trauma Defendant caused each individual victim be known.

The "DoorFrameLight" victim series was in Defendant's collection. The "DoorFrameLight" victim was notified by NCMEC of his guilty plea to the universal plea agreement. The "DoorFrameLight" victim wrote a message directly to the EDTN's victim witness coordinator: "In the spring of 2024, people at my school had accessed my pack, and were showing it to others at my school. The "pack" was pictures I was blackmailed into sending, from when I was a minor that was sold by multiple people. Andrew had also blackmailed me with the pack earlier in 2023 and told me if if I didn't do what he said that he would send the pack to people from my school. This was over snapchat and he then made me go on a call with him to do whatever he asked. This led to me having suicidal ideations." This victim's story is the perfect example of how the victimization of these children never stops. The defendant had over 200,000 images/videos, and he still blackmailed the "DoorFrameLight" victim to make her do live illicit sexual acts for him under the threat of sending her older CP to people at her school.

Respect for the law. Defendant is from the United Kingdom (UK). His criminal acts demonstrated he does not respect the laws of the United States, nor did he while he was employed and living in this country. When Defendant was interviewed by the agents on the case, he tried to justify his actions saying that, in the UK, sixteen (16) years old is the consenting age of an adult. While that fact may be true, that is not a defense to breaking the laws of other countries in which you are a guest. Whether or not Defendant will learn to respect the laws of the United States from his term of imprisonment is not a factor for consideration in sentencing, as Defendant will be deported back to the UK and not allowed back into the United States.

Making sure Defendant receives a just punishment is a factor to consider. It will never be known how many children Defendant has victimized. It is doubtful Defendant even knows the

number or identities of his victims.  These are just two of the reasons why Defendant's crimes are extremely serious and deserve a hefty length of imprisonment.

**(B)    Deterrence to criminal conduct.**

Section 3553(a) also guides the Court to consider the need for a sentence that affords adequate deterrence to criminal conduct.  From the standpoint of sentencing, deterrence takes two forms: (1) specific deterrence, to deter similar crimes by the defendant who is being sentenced, and (2) general deterrence, to deter criminal actions by others who may contemplate committing similar offenses.  A sentence of two-hundred thirty-five (235) months imprisonment is hopefully consistent with the idea of specific deterrence for Defendant.

General deterrence is of utmost importance in this case.  It is imperative to send a message to other would-be child predators that crimes against children, especially sexual crimes, will not be tolerated, and those who commit them will suffer stiff consequences.  It is equally important to send a message to the community letting them know that child predators come from all different socio-economic backgrounds, ethnicities, and races.  In this case, it is important to emphasize how this prolific child predator operated in public.  While committing his crime, Defendant was literally a nuclear physicist employed as the director of nuclear energy programs at the Oak Ridge National Security Laboratory, one of our nation's top government labs.  Sentencing Defendant to two-hundred thirty-five (235) months imprisonment will hopefully send a message to the community, and to would be child predators, that enticing a child for illicit sexual acts will not be tolerated.  Further, the sentence Defendant receives will educate society: Be wary of children being unsupervised on the internet; the internet provides easy access to children anywhere in the world; child predators come from all walks of life.

In cases involving sexual violence against minor children, there is a critical need for

general deterrence.  A two-hundred thirty-five (235) month sentence of imprisonment will send a message to would-be child predators to think twice before committing any crime against a child, especially a sex crime.  Furthermore, with this case, a message will be sent to would-be predators that they cannot hide behind their status, title, or position.

**(C)** **A sentence of two-hundred thirty-five (235) months imprisonment will protect the public from further crimes by the defendant.**

Most importantly, our children need to be protected from the acts of this Defendant. Defendant has no concern for the victims of his crimes.  If he did, he would never have committed his criminal acts.  Defendant is a smart man, a nuclear physicist with the ability to consider the long-term consequences his criminal acts would have on his minor victims.  How many victims have emotional damage based on Defendant's actions?  It is probably more than his contacts through Snapchat.

Found in Defendant's Snapchat conversations was a communication with "Kaylalawtin3" in July of 2025, where Defendant admits to raping his niece when she was twelve (12) to thirteen (13) years of age, and having "stashes" of nudes of his niece from her mid-to-late teenaged years. [Doc. 46, ¶ 35 and Doc. 17, ¶ 35].  Defendant denies he raped his niece, stating that it was just a fantasy. [Doc. 49, Def. Objections to the PSR, pg. 2; Case No 3:25-CR-140 does not appear to have the filing.].  The very fact that Defendant had a "fantasy" about raping his underaged niece is disturbing, more so that he shared this with another person over the internet.  This is a warped justification for his crimes.  First and foremost, Defendant should NOT have sexual fantasies about his twelve (12) to thirteen (13) year-old niece.  Second, those unnatural thoughts should have been kept to him, and for which help should have been sought.  Third, Defendant, having a niece whom he claims to care for, should have thought about how he would feel if a fifty-six (56) year old man sexually approached him when he was a minor.

One of his victims associated with the indictments had to be placed in a mental health facility after he had exploited her. How many more victims have been placed in medical care because of his exploiting them? The answer will never be known.

Removing Defendant from society will ensure that one less child predator is on our streets during his time of incarceration. Defendant will then be immediately deported back to his country once he has completed his sentence. [Doc. 33, ¶ 18 and Doc. 4, ¶ 18]. Unfortunately, there is no guarantee he won't go after children in the United Kingdom after he is deported. All he needs is the internet. Hopefully, the memory of serving prison time in the United States will deter him.

**WHEREFORE**, for the reasons stated above, the United States, to include EDTN and DSC, requests this honorable Court to impose a sentence of two hundred thirty-five (235) months imprisonment, followed by immediate deportation as contemplated in the plea agreement [*Id.*] Additionally, the United States requests this honorable Court impose at least a term of supervised release of twenty (20) years to ensure Defendant never returns to the United States; as well as restitution, fines, special assessments, and special conditions the Court deems appropriate for Defendant.

Respectfully submitted this 29th day of July 2026,

FRANCIS M. HAMILTON III
UNITED STATES ATTORNEY

By:    *s/Jennifer Kolman*
JENNIFER KOLMAN
Assistant United States Attorney
GA Bar #427930
800 Market Street, Suite 211
Knoxville, TN 37902
(865) 545-4167
*Jennifer.kolman@usdoj.gov*