| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ANDREW WORRALL, )<br>)<br>Defendant. ) | Case Nos. 3:25-CR-118-TAV-DCP<br>3:25-CR-140-TAV-DCP<br><br>Judge Thomas A. Varlan |

**DEFENDANT'S SENTENCING MEMORANDUM**

## I. Introduction and Relief Requested

Andrew Worrall asks the Court to impose a sentence of 180 months. That is the mandatory minimum that Congress set for this offense. Fifteen years in federal prison is sufficient to punish this crime, to deter others, and to protect the public. A longer sentence would be greater than necessary.

The government filed its sentencing memorandum today.[1] It asks for 235 months. That is the cap the parties negotiated under Federal Rule of Criminal Procedure 11(c)(1)(B). The government does not ask for more. The only question before the Court is where the sentence should fall between 180 and 235 months. The defense does not ask the Court to reject the parties' agreement. The defense does not ask the Court to disagree with the Sentencing Guidelines. The defense asks the Court to impose the bottom of the lawful range.

The parties have also resolved restitution. Mr. Worrall has stipulated to pay $65,000 to the two identified victims who requested restitution. He entered that stipulation as a compromise of

---

[1] Doc 51.

disputed claims. The stipulation preserves his express denial of the factual allegations described in Part IV.B below.

## II.  The Guideline Calculation Is Not in Dispute

Mr. Worrall does not object to the guideline math in the Presentence Report. The base offense level for each count is 32 under USSG § 2G2.1(a). The Report adds two levels for a sexual act under § 2G2.1(b)(2)(A). It adds two levels for the use of a computer under § 2G2.1(b)(6)(B). It adds two levels for the use of a minor under § 3B1.4. The adjusted level for each count is 38. The multiple-count adjustment adds two levels. The combined level is 40. The pattern enhancement under § 4B1.5(b)(1) adds five levels. Acceptance of responsibility under § 3E1.1 subtracts three levels. The total offense level is 42. The criminal history category is I.

That produces an advisory range of 360 months to life. The statutory maximum on each count is 360 months. The mandatory minimum on each count is 180 months.[2]

Both parties have already agreed that a guideline sentence is longer than necessary. The government asks for 235 months. It tells the Court that the parties set that cap "for justifiable reasons which will be presented at the sentencing hearing."[3] The defense agrees. The government thus concedes that justifiable reasons support a sentence 125 months below the guideline term. The same reasons further support the defense's argument for the statutory floor. The Court should impose 180 months.

## III.  The Court Must Impose a Sentence Sufficient but Not Greater Than Necessary

Section 3553(a) requires the Court to impose a sentence "sufficient, but not greater than necessary" to serve the purposes of sentencing. 18 U.S.C. § 3553(a). The guideline range is the

---

[2] 18 U.S.C. § 2251(e).
[3] Doc. 51 at 2.

starting point. It is not the ending point. The Court must make an individualized assessment based on the facts of this case.[4]

The defense raises no policy disagreement with § 2G2.1. The argument here is narrow and individualized. The facts of this case and the characteristics of this defendant show that 180 months is enough.

## IV.  The Section 3553(a) Factors Support a Sentence of 180 Months

## A.  The nature and circumstances of the offenses of conviction

The offenses are serious. Mr. Worrall does not minimize them. He used Snapchat to solicit sexually explicit images and videos from two 17-year-old girls over two days in July 2025. His conduct was deliberate. He accepts full responsibility for it.

The conduct of conviction falls at the lower end of the range of conduct that § 2G2.1 covers. Both victims were 17 years old. All of the contact occurred online. Mr. Worrall never met either victim. He never traveled to either victim. He never had physical contact with any child. The charged conduct spanned two days.

The guideline cell that drives the Pre-Sentence Report captures far more severe conduct. It includes hands-on sexual abuse. It includes sadistic conduct. It includes the production of images of very young children. The national data confirm the gap. For defendants at this offense level and criminal history category, the median sentence was 300 months.[5] The parties' negotiated cap of 235 months already reflects that judgment. A sentence of 180 months reflects it fully.

---

[4] *Gall v. United States*, 552 U.S. 38, 49-50 (2007).
[5] PSR ¶ 115.

3

## B. The Court should rest the sentence on reliable, proven facts

The government's memorandum leans on allegations that are uncharged, unproven, or disputed. The Court should sentence Mr. Worrall on reliable facts. A sentencing court may rely only on information that has sufficient indicia of reliability.[6] When a defendant disputes a fact, the Court must resolve the dispute on reliable evidence or state that it will not consider the fact.[7]

First, the hard drive. Mr. Worrall does not dispute that agents seized an external hard drive from his home and that it contained child sexual abuse material. The completed NCMEC analysis identified 53 known series within that material. That conduct is serious. But the Court should keep three facts in view. The government did not charge Mr. Worrall with possession. The Presentence Report classifies this material as offense behavior outside the relevant conduct.[8] Furthermore, the government concedes that law enforcement cannot determine whether Mr. Worrall created any of it or obtained it from other sources.[9] The guideline level of 42 and the advisory range of 360 months rest on the production counts alone. The collection does not change that math. It cannot justify pushing the sentence above what the production counts require.

Second, the blackmail allegation. The government's memorandum quotes a message from the victim of one identified series. The message alleges that Mr. Worrall blackmailed her in 2023.[10] Mr. Worrall denies that allegation without qualification. The allegation appeared for the first time after his guilty plea. It is an unsworn statement to a victim witness coordinator. No agent has corroborated it. No charge rests on it. Mr. Worrall has stipulated to pay this victim restitution as a

---

[6] USSG § 6A1.3(a).
[7] Fed. R. Crim. P. 32(i)(3)(B).
[8] PSR ¶ 37.
[9] Doc. 51 at 4.
[10] Doc. 51 at 5.

4

compromise, and the stipulation expressly preserves his denial. If the government wishes the Court to consider this allegation, it must prove it with reliable evidence. It has offered none. Respectfully, the defense requests the Court not consider that allegation.[11]

Third, the niece allegation. The Pre-Sentence Report and the government's sentencing memorandum repeat a claim that Mr. Worrall sexually abused his niece years ago. The defense has addressed the inclusion of this claim in a formal objection to the PSR. Mr. Worrall denied that claim to federal agents. The statement concerning his niece was in response to a fantasy another individual shared with him during an online conversation. Agents searched his phone and the external hard drive. They found no images of his niece.[12] No victim has been identified. No charge has been brought. The Court should disregard it.

Fourth, the "20 minors" characterization. The Pre-Sentence Report states that about 20 Snapchat users claimed to be under 18. Agents confirmed the ages of only two. They are MV1 and MV2.[13] The defense has filed an objection to this portion of the PSR. The Court should sentence Mr. Worrall on the conduct involving the two confirmed victims, not upon unverified age claims.

## C. The history and characteristics of the defendant

Mr. Worrall is 56 years old. He has no prior criminal record. His criminal history category is I. This offense stands alone against a long record of lawful and productive work.

Mr. Worrall built a 30-year career in nuclear science. He held senior research and leadership roles in the United Kingdom and the United States. He held government security clearances for decades. He mentored students and advised public officials. The defense does not

---

[11] Fed. R. Crim. P. 32(i)(3)(B).
[12] PSR ¶¶ 35-36.
[13] PSR ¶ 34.

offer this record to argue that an accomplished person deserves special leniency. The defense offers it for two reasons. First, it shows that this offense was a sharp break from a lifetime of lawful conduct. Second, it shows a man who can follow rules and comply with supervision over the long term.

People who have known Mr. Worrall for years describe the same man. Bruce Bevard worked with Mr. Worrall at Oak Ridge National Laboratory and has known him for about 12 years. He describes Mr. Worrall as honest, dependable, and an outstanding manager who mentored young staff and helped them build their careers.

Jeff Chapman met Mr. Worrall at the laboratory and became a close friend. He describes a man of steady character who showed genuine care for the people around him, including during the recent death of Mr. Worrall's mother.

Morris Hassler, a colleague in the nuclear field who became a close friend over roughly ten years, describes the same caring and thoughtful man, quick to offer help to others in times of illness or loss.

Sydney Brawner, his partner since 2023, describes a man whose kindness is active and habitual. Mr. Worrall is known to seek those experiencing homelessness to give them food and supplies, for organizing the donation of leftover food to those in need, and for standing by Ms. Brawner through the loss of her brother.

Their letters describe consistent conduct over many years. They show that this offense does not capture the whole of the man. The letters are attached as Exhibit A.

6

Mr. Worrall had no history of mental health treatment before this case. Since his arrest he has suffered from anxiety. He has been prescribed medication for it.[14]

Mr. Worrall is remorseful. His conduct shows it. He pled guilty early. He stipulated to restitution. He forfeited his home. He will address the Court directly at sentencing and accept responsibility in his own words.

**D.  The need for the sentence**

A sentence of 180 months reflects the seriousness of the offense. Fifteen years in federal prison is a severe punishment. It is the floor that Congress itself set for this crime. No one would call it lenient.

A sentence of 180 months provides ample deterrence. The total sanction is severe. It includes 15 years in prison. It includes supervised release for life. It includes lifetime registration as a sex offender. It includes the loss of his home through forfeiture. It includes $65,000 in stipulated restitution. It includes permanent removal from the United States. Mr. Worrall has suffered financial, professional, and personal ruin. Surely, that combination sends a clear message to others.

Mr. Worrall will also serve his time the hard way. As a defendant convicted under § 2251, he cannot earn First Step Act time credits.[15] He will serve about 85 percent of any sentence imposed. As a deportable alien subject to an immigration detainer, he is ineligible for minimum-security placement, halfway house release, and home confinement. When his prison term ends, he will not go free. He will pass into immigration custody to await removal. His age, his nationality,

---

[14] PSR ¶ 81.
[15] 18 U.S.C. § 3632(d)(4).

his public profile, and the nature of his offense will also mark him inside prison. Courts may consider a defendant's unusual vulnerability in custody.[16] His 180 months will be harder than most.

A sentence of 180 months protects the public. Three facts drive this point.

First, Mr. Worrall will be released as an old man. At 180 months he will be released near the age of 69.

Second, the data show that older first-time offenders rarely reoffend. The United States Sentencing Commission tracked federal offenders over an eight-year period. Offenders in Criminal History Category I had a rearrest rate of 30.2 percent. Offenders aged 60 and older had a rearrest rate of 15.9 percent. Offenders who were both in Category I and aged 60 or older had a rearrest rate of 9.4 percent.[17] Mr. Worrall fits that low-risk profile.

Third, Mr. Worrall will be deported. He is a citizen of the United Kingdom. His lawful permanent resident status has expired. The Pre-Sentence Report states that he will be removed to the United Kingdom upon his release.[18] Removal will end any risk that he could pose to the American public. The government worries that no sentence can guarantee his conduct abroad.[19] That concern applies to any term of years. The United Kingdom maintains its own strict sex offender laws and will receive him as a convicted sex offender.

Supervised release for life adds another layer of protection. The Court will impose conditions for sex offenders. Mr. Worrall does not contest those conditions.

---

[16] *Koon v. United States*, 518 U.S. 81, 111-12 (1996).
[17] U.S. Sent'g Comm'n, Recidivism of Federal Offenders Released in 2010 (2021).
[18] PSR ¶ 79.
[19] Doc. 51 at 8.

### E. A sentence of 180 months avoids unwarranted disparity

Section 3553(a)(6) directs the Court to avoid unwarranted sentencing disparities. A sentence of 180 months serves that goal. It is the sentence that Congress set as the floor for this crime. It is not an outlier. The conduct of conviction is less severe than the conduct in the typical case at this offense level. A sentence at the bottom of the lawful range matches the lower severity of that conduct.

### V. Restitution, Fine, Forfeiture, Supervised Release, and Treatment

The parties have stipulated to restitution under 18 U.S.C. § 2259. Mr. Worrall will pay $50,000 to the victim of the "PurpleCheer" series and $15,000 to the victim of the "DoorFrameLights" series. Those are the only two victims who requested restitution. Mr. Worrall entered the stipulation as a compromise of disputed claims. He has also forfeited his home in Farragut, Tennessee.[20] He accepts supervised release for life and the proposed conditions for sex offenders.

Mr. Worrall asks the Court to impose no fine given the significant financial penalties already levied. The defense also asks the Court to recommend that the Bureau of Prisons designate him to a facility with a Sex Offender Management Program. He intends to complete treatment. Treatment serves his rehabilitation, and it protects the public.[21]

### VI. Conclusion

The government asks for 235 months. Andrew Worrall asks the Court to impose a sentence not greater than 180 months. That sentence punishes a serious crime. It deters others. It protects the public. It is sufficient, and it is not greater than necessary.

---

[20] Agreed Preliminary Order of Forfeiture (Doc. 38).
[21] 18 U.S.C. § 3553(a)(2)(D).

Respectfully submitted,

*Counsel for Andrew Worrall*

By: /s/ Nathaniel R. Ogle
Nathaniel R. Ogle, BPR No. 032286
Charles C. Burks, Jr., BPR No. 000956
Burks & Ogle, PLLC
800 S. Gay Street, Suite 1900
Knoxville, Tennessee 37929
(865) 522-4964
nate@knoxlegalteam.com

## CERTIFICATE OF SERVICE

I certify that on July 29, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. The system will send notice of this filing to Assistant United States Attorney Jennifer Kolman and to all counsel of record.

/s/ Nathaniel R. Ogle
Nathaniel R. Ogle

10

May 15, 2026

To Whom It May Concern:

Letter of Character Reference – re Andrew Worrall

I have known Andrew Worrall for approximately 12 years both as a co-worker and as an "outside of work" friend.  We played golf together frequently, traveled together several times for both work and golf, and socialized periodically.  During my interactions with Andy, I found him to be honest, forthright, dependable, highly motivated, and a good friend. Andy's work ethic is above reproach, and he is an outstanding manager. He is an expert in several nuclear power related areas and has always been willing to mentor young staff and help them move forward in their careers.  Besides providing technical oversight and direction, he has always gone the extra mile and helped the new staff with encouragement, work contacts (networking), suggested work projects, and guidance on advancement opportunities. Andy has worked extensively with the international community in areas such as workforce development where he interfaced directly with staff from nations interested in developing their nuclear capabilities.  His technical expertise and positive "can do" attitude in providing the help they needed was always greatly appreciated by the recipients.

Please let me know if there is any further information you need from me.

Bruce Bevard

865-300-3671

BruceBevard7@gmail.com

May 28, 2026

To:      Whom it May Concern

From:  Jeff Chapman

Re:      Letter of Character Reference for Mr. Andrew Worrall

Mr. Worrall (Andy) and I met while working at Oak Ridge National Laboratory in 2012-2014, time period.  He was in a completely different division from me, but, nevertheless, had many common interests in the design and construction of nuclear reactors to support the emerging electric power demands.  Andy was (and is) an incredibly well-respected nuclear engineer, an expert in the entire nuclear fuel cycle, not only here in the United States, but the world-over.  He started and led, as a contractor, the DOE GAIN (Gateway for Accelerated Innovation in Nuclear) program, to accelerate the commercialization of advanced nuclear technologies by providing industry access to national laboratory expertise, facilities, and regulatory support.

In 2017 (or so), we recognized that we enjoyed golf, and became great friends, often times playing golf 2-3 times a week in the summer, except for the period I was living in DC (July 2018-July 2021).  We travelled with other mutual friends to play golf at Pebble Beach (2018), and travelled to one PGA Championship match, in 2024.

Andy was always cordial, friendly, interested in how people are doing, in life, in their career, and incessantly focused on the future build-out of nuclear power reactors.  Everyone that we would meet, on or off the course, enjoyed Andy's company, his enthusiasm, and character.   My wife and I met his sister (and her family), and supported Andy as his mother passed away in the last couple of years.  In all cases, when I was with him, with or without family, Andy exuded straight-up character and joy to those around him.


Jeff Chapman

Morris Hassler
211 Silo Drive
Lenoir City, TN 37772
June 1, 2026


Subject: Character Reference for Mr. Andrew Worrall


To Whom It May Concern:

I have known Andrew (Andy) Worrall professionally for approximately 10 years, primarily through work encounters during Institute of Nuclear Materials Management or American Nuclear Society conferences. I began to know Andy more personally in the Fall of 2020 when I joined a group of guys that played golf together. We played golf a lot during the COVID-19 period as it was one of the activities that you could do outside. As we got to know one another, we became close friends. He was part of a very close four-person golf membership group that I was part of up until his arrest. Before the arrest, I considered Andy one of my closest friends and someone that I could talk to when I needed someone to listen. As for his character, he was one of the most caring, friendly, and thoughtful individuals that I know. He would always be the first to offer a helping hand if I or others had an illness, surgery, or personal loss. Andy was a very fun person to be around and generally was the social activities lead for our group of friends. We would go out to dinner often, have drinks, and generally spend time together golfing and socializing.

Andy was very well respected in his professional career and was extremely knowledgeable of the nuclear fuel cycle. He led national initiatives with his job as Director of Nuclear Energy Programs at the Oak Ridge National Laboratory. He worked very hard at his job and was passionate about his work and career. Andy was highly sought after as a professional for his knowledge and experience. He was awarded with a prestigious award from his undergraduate university, Lancaster University, for his lifetime achievements. Andy was very appreciative of the opportunities he has had in the United States and loved his home country of England. I believe that he would have retired back in the United Kingdom at some point and we as his friends were looking forward to visiting him.

Personally, I continue to struggle with Andy's behavior that has been revealed since the October 3, 2025, arrest. I never knew that "Andy" and am appalled by the actions he confessed to and was convicted of. He hid those dark times very well and those of us that knew him were truly shocked by his actions. I have lost a very good friend, and I grieve everyday as some fun memory of Andy is experienced. Many of us miss him very much. I

hope that he can be rehabilitated, start a new life, and that potentially, I can visit a "New" Andy someday that resembles my friend Andy.

Andrew Worrall will have to pay his debt to society (and he has already lost so much) for his actions and the pain he has caused to those suffering. However, I do hope that his sentence is not overly punitive for the "Andy" that was my friend. I wish him the best.

Sincerely,

Morris Hassler

Work Colleague and Friend of Andy Worrall

Sydney E. Brawner

13007 Magnificent Ln

Knoxville, TN 37932

(865) 771-6749


To Whom It May Concern,

It is my privilege to write a character reference letter for Andy. Having known him since early 2023, first as a close friend and subsequently as my partner, I have had a first hand experience of his exceptional character. Andy is a man defined by empathy, active selflessness, and an unwavering commitment to uplifting the people and communities around him.

Andy's kindness is not passive; it is an active choice he makes regularly. Early in our relationship, our dates downtown or at the farmer's market routinely concluded in seeking out individuals experiencing homelessness to provide them with food, clothing, or essential supplies. This spirit of generosity is infectious. So much so that he later convinced my workplace to package all leftover food from our holiday party into meal plates, which we then distributed to those in need under the bridge near KARM. Andy does not simply witness hardship; he has a constant desire to aid others and looks to find ways to support and uplift them with genuine kindness and respect.

Beyond community outreach, Andy's capacity for compassion has profoundly healed and reshaped my personal life. Following the painful loss of my brother to suicide in July 2023, Andy stood by me as a major pillar of support. At the time, I was estranged from my sister and nephew, making the holiday season a painful reminder of isolation rather than a time of celebration. Recognizing this, Andy invited me to spend the holidays with his family in England. Witnessing the deep, resilient bonds he maintains with his family, despite living thousands of miles apart, was a turning point for me. He taught me the true value of family, ultimately giving me the perspective and courage I needed to successfully reunite with my sister and nephew.

Since that reconciliation, Andy has embraced my family as his own. Upon learning about the challenges my siblings and I faced growing up, his immediate response was to help. He has consistently stepped forward without hesitation, whether providing safe, clean furniture for my sister or offering financial backing during difficult times. He acts entirely from a place of love and acceptance, never seeking recognition or asking for anything in return.

Andy possesses a rare combination of moral integrity, selflessness, and a nurturing spirit. He has not only made a tangible difference in the lives of the less fortunate and my own family, but he has also challenged me to become a better, more compassionate person. I have absolute

confidence in his character, his intentions, and his capacity to bring immense value to our community.

Please feel free to contact me if you require any further information or have any additional questions.

Sincerely,

*Sydney E. Brawner*

Sydney E. Brawner